## Van Tassel v. Churchill et ux.

*Realty—Sale—Contract—Husband and wife—Judgment against husband alone.*

1. Where, in an action against husband and wife to recover penalty for failure to convey real estate as per agreement, it appears the wife is not liable as to part of the land and there is no method of apportioning the damages, the action must be dismissed as to her.

2. Where such agreement provides for liquidated damages should "either party" fail to perform, it is both joint and several and judgment may be entered against the husband alone.

*Assumpsit* for penalty in agreement to sell realty. Motion for judgment for defendants *n. o. v.* C. P. Tioga Co., Sept. T., 1923, No. 23.

*A. B. Dunmore* and *Rockwell & Rockwell*, for plaintiff.

*C. H. Ashton*, for defendants.

Berkey, J., 16th judicial district, specially presiding, April 18, 1927.—The plaintiff brought suit against the defendants, husband and wife, on an agreement in writing to recover damages for breach of the contract. The portions of the agreement essential to a proper disposition of the legal proposition at issue are these:

"Agreement . . . between Chas. C. Churchill and Betsy Jane, his wife, party of the first part, and Harlow M. Van Tassel, party of the second part, said parties of the first part, in consideration of . . . $3900, . . . agree to sell unto the said party of the second part . . . the C. C. Churchill farm of 166 acres . . . (and certain) personal property. Parties of the first part, on receiving such payment, . . . shall . . . deliver to said party of the second part, or to his heirs or assigns, a proper deed. . . . It is mutually agreed that, should either party hereto fail or neglect to duly perform his part of this agreement, he shall forthwith pay and forfeit as liquidated damages to the other party . . . 10 per cent. of the agreed price of sale.

"And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties."

The defendants pleaded and proved that the land embraced in the contract consisted of two parcels, namely, 53½ acres owned by Charles C. Churchill and 112½ acres were owned by the defendants by entireties. Under these undisputed facts as to the ownership of the land described in the contract, no judgment can be entered on the verdict including Betsy Jane Churchill: Dean *v.* Shelly, 57 Pa. 426; Crain *v.* Warner, 87 Pa. Superior Ct. 605.

The cases cited decide that Mrs. Churchill is not liable for the breach of the contract as to the land in which the title is in the husband alone. She would be liable with her husband, jointly and severally, as to the 53½ acres for the breach, but there is no rule of law based either upon principle or convenience that apportions the damages.

It now remains to determine whether a judgment may be entered on the verdict against Charles C. Churchill. The contract in suit must be construed as joint and several on the part of the covenantors. It is a general presumption of law when two or more persons undertake an obligation that they undertake jointly. Words of severance are necessary to overcome this primary presumption. In all written contracts, therefore, whether the liability is joint or several, or joint and several, is determined by looking at the words of the instruments and at them alone. The language of joinder or severalty is the test.

The agreement is not only joint, but joint and several; that it is several appears from this language: "It is mutually agreed that should either party hereto fail or neglect to duly perform his part, he shall forthwith pay and forfeit . . . as liquidated damages to the other party."

This language signifies that the word "party" refers to the singular number, as it is followed by the singular pronoun he and his, whose antecedent must be one person. It means that if either of the covenantors or the covenantee breaches the contract, either of the three persons named therein shall be liable for the damages designated. It could not have been the intention of the parties that the covenantee could not recover until it was established that both the covenantors had breached the contract.

The agreement concluded: "And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties." Who are the respective parties?

In Geddis *v.* Hawk, 10 S. & R. 33, pages 37 and 38, it is said: "The obligors set out with an acknowledgment of indebtedness in words which denote no intention that there should be a severance of their responsibility; but in the conclusion, they use these words: 'To which payment well and truly to be made or done; we bind ourselves and each of our heirs, executors and administrators.' Here it must be conceded that if the word 'each' were to be transposed so as to be grammatically applicable to the persons of the obligors instead of being exclusively applicable to the persons of their representatives, these obligations would be several as well as joint. Now this word 'each' must be taken as having been intended to have some operation and legal effect; and if it can have none where it stands, we are bound to suppose that this particular collocation of the words used was purely accidental and contrary to the real intent and meaning of the parties. But the word can have no operation where it stands; for it is impossible that a bond shall be joint as to the immediate parties and several as to their representatives, survivorship as respects the remedy being an incident of every obligation which cannot be dispensed with, even by the agreement of the parties, as the law will not suffer its forms to be violated by the introduction of new and unheard-of modes of proceeding. To permit the personal representatives of a deceased obligor to be joined in an action against the survivor, or all the representa-

tives of the immediate parties, where the immediate parties are all dead, to be sued jointly or severally at the election of the obligee, would involve the administration of the law in absurdity and endless perplexity. Such an anomaly could never be tolerated. We must then intend that the word 'each' was designed to be applicable to the persons of both obligors wherever they are named, and if that be so, the consequence is unavoidable that these obligations are several as well as joint. This result is not obtained by a process of artificial reasoning inconsistent with the real meaning of the parties. Let any one read these obligations for himself and his first impression will undoubtedly be that the obligors actually intended to bind themselves jointly and severally."

In Besore v. Potter, 12 S. & R. 154, on page 158, it is said: " 'We bind our heirs, executors and administrators, and each of our heirs, executors and administrators;' in this, instead of each, it is every of them. All of them would have been joint, every of them is several, and the natural construction, the common significance, of these words would be that the respective heirs of the obligors were intended to be bound."

In Wampler v. Shissler, 1 W. & S. 365, we find this language: "The words . . . are, 'to be levied of their goods and chattels, lands and tenements, respectively;' which is equivalent to a provision that the amount should be levied of each."

See, also, Wood v. Hummel, 4 Watts, 50; National Bank v. Buckwalter, 214 Pa. 289; Morrison v. American Surety Co., 224 Pa. 41, 42, 43; Bradley v. Holleran, 59 Pa. Superior Ct. 1, 2, 3.

Under the common law procedure, when the suit had been brought against two or more defendants and the evidence disclosed a case against a less number than were named in the plaintiff's statement of claim, no judgment could be entered against any of them, but the common law procedure was abolished by the Act of June 29, 1923, P. L. 981, entitled "An act relating to procedure wherein it is pleaded that two or more defendants are liable for a specific cause of action."

Our Supreme Court recently has held: "Inasmuch as the Act of June 29, 1923, P. L. 981, relating to suits where two or more persons are charged with a joint liability, deals with procedure alone and affects no substantive right, it applies to all cases within its purview whether arising prior to its enactment or thereafter." The act provides: "If the facts are not in dispute, the question of liability of any or all of them may be reserved for consideration by the court in banc:" Cleary v. Quaker City Cab Co., 285 Pa. 241.

In the case supra, speaking of the quoted provisions, it is held: "[This provision] is meant to cover cases where joint liability of the defendants is pleaded in plaintiff's statement of claim, but where, at the end of the trial, after taking the evidence into consideration, the presiding judge is doubtful as to whether or not, on the undisputed facts, a joint liability of one or more of the defendants has been proved. Under such circumstances, the trial judge may reserve the point concerning which he is in doubt for consideration of the court in banc."

In the case at bar, the defendant presented a point for binding instructions for the defendants, which was refused. The case is now before the court on a motion for judgment n. o. v. based on the point for binding instructions. The record as it stands empowers the court to treat the case the same as if the point had been reserved.

The court having determined that the contract on which the suit is based is several as well as joint, and that Betsy Jane Churchill was under disability

Van Tassel *v.* Churchill et ux.

of coverture, it is held that the action must be dismissed as to her and that judgment upon the verdict may be entered against the other defendant, Charles C. Churchill: Cleary *v.* Quaker City Cab Co., 285 Pa. 241; Hill & Co. *v.* Marriner and Sook, 86 Pa. Superior Ct. 545; Cairns *v.* Spencer, 87 Pa. Superior Ct. 126; Mullen *v.* McGeagh, 88 Pa. Superior Ct. 381.

*Decree.*

Now, April 18, 1927, the motion for judgment *non obstante veredicto* is overruled; the action as to Betsy Jane Churchill is dismissed, and leave granted to the plaintiff to proceed to judgment against Charles C. Churchill, defendant.

From G. Mason Owlett, Wellsboro, Pa.